# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

| | |
|---|---|
| **USHER MILLS,** | : |
| | : |
| **Plaintiff,** | : |
| | : **CIVIL ACTION** |
| **v.** | : **FILE NO.** |
| | : |
| | : |
| **UNITED STATES OF AMERICA,** | : |
| | : |
| **Defendant**. | : |

## COMPLAINT FOR DAMAGES

Plaintiff Usher Mills ("Plaintiff" or "Mr. Mills"), files this Complaint against Defendant United States of America seeking damages for the professional negligence of Defendants' agents and alleges as follows:

## JURISDICTION AND VENUE

1.

Plaintiff Usher Mills is a resident of Rockdale County, Georgia, and has been a resident of the State of Georgia at all times relevant to this case and thus is a resident of the Northern District of Georgia.

2.

The claims herein are brought against the United States pursuant to the Federal Tort Claims Act (28 U.S.C. § 2671, *et seq*.) and 28 U.S.C. §1346(b)(1), for money damages as compensation for personal injuries that were caused by the negligent and wrongful acts and omissions of employees of the United States Government, while acting within the course and scope of their offices and employment, under circumstances where the United States of America, if a private person, would be liable to Plaintiff in accordance with the laws of the State of Georgia.

3.

Venue is proper in that Usher Mills is a resident of the Northern District of Georgia and all, or a substantial part of the acts and omissions forming the basis of these claims, occurred in the Northern District of Georgia.

4.

Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Torts Claims Act.

5.

This suit has been timely filed, in that Plaintiff timely served notice of his claims on the Department of Veterans Affairs on August 25, 2015 (Exhibit "A").

The Department of Veterans Affairs assumed responsibility for evaluating these claims and rendering a decision; however, The Department of Veterans Affairs denied Plaintiff's claims on February 22, 2016 (Exhibit "B").

6.

A copy of the Summons and Complaint may be served upon the Attorney General of the United States in Washington, DC, and upon the United States Attorney for the Northern District of Georgia.

7.

Upon information and belief, and at all relevant times hereto, Dr. Shylaja Prabhakar was employed by Defendant United States of America and specifically the Department of Veterans Affairs.  Upon information and belief, and at all relevant times hereto, Dr. Prabhakar is and was a duly licensed and practicing physician in the State of Georgia, who undertook to care for the health of Usher Mills on July 10, 2014. At all times material hereto, a physician/patient relationship existed between Mr. Mills and Dr. Prabhakar.

8.

At all times material hereto, Dr. Prabhakar was acting within the course and scope of her employment and/or agency with the Defendant United States of America and specifically the Department of Veterans Affairs, and thus, Defendant

United States of America, is responsible for Dr. Prabhakar's negligent acts or omissions and any injuries and damages arising therefrom.

9.

Other VA health care providers undertook to provide care and treatment to Usher Mills on behalf of Defendant United States of America, on approximately July 10, 2014, through August 5, 2014. These other professional health care providers were also acting within the course and scope of their employment with Defendant United States of America, and thus, Defendant United States of America, is responsible for their negligent acts or omissions and any injuries and damages arising therefrom.

**EVENTS FORMING THE BASIS OF THE CLAIMS OF USHER MILLS**

10.

At all times relevant to this Complaint, Mr. Usher Mills was a 62-year-old Air Force veteran with a known history of diabetes, diabetic neuropathy, and worsening leg pain.

11.

On June, 9, 2014, Mr. Mills called the VA "TAP line" with concerns about numbness in his left leg. The telephone nurse, Pamela J. Pope, recorded that: "Veteran reports sudden numbness/weakness/pain left leg/foot x 2 weeks. States it

is difficult for him to walk. PER VHG VETERAN TO BE SEEN URGENTLY ADVISED VETERAN TO REPORT TO THE NEAREST ER WILL FORWARD TO COVERING PROVIDER FOR FINAL DISPOSITION." Nurse Pope instructed Mr. Mills: "You need to see a doctor now or your condition could worsen. Consider calling an ambulance."

12.

As instructed, Mr. Mills went to the Rockdale Medical Center Emergency Department. The treating physician at Rockdale Medical Center believed the pain was either caused by muscle strain or diabetic neuropathy. Mr. Mills was prescribed Naproxen and instructed to follow up with his primary care physician.

13.

Mr. Mills made arrangements to be seen by his primary care physician at the VA Hospital in Stockbridge, Georgia. At some point, he was given an appointment for July 10, 2014.

14.

On June 11, 2014, Mr. Mills called the VA again with complaints of numbness in left foot. The telephone nurse returned his call on but he did not answer. When he called back on June 12, 2014, Mr. Mills reported that he "feels his foot is frozen."

15.

On June 18, 2014, prior to his July 10th appointment, Mr. Mills called the VA again with complaints of numbness in left foot.

16.

Because of his worsening condition, Mr. Mills returned to the Rockdale Medical Center Emergency Department.

17.

The treating physician now felt confident that Mr. Mills was suffering from diabetic neuropathy and prescribed him 300 mg of Gabapentin. Mr. Mills was instructed to keep his appointment with the VA because further follow-up was critical.

18.

On July 10, 2014, Mr. Mills was seen at the VA by Shylaja Prabhakar, M.D. and a nurse. Before this time, Mr. Mills had called the VA at least five times complaining of pain and numbness in his left foot and been seen two times in the ER.

19.

At this appointment, Mr. Mills informed the VA healthcare providers that his pain level was a 9 out of 10.

20.

At the time of this appointment, Mr. Mills was experiencing severe pain and numbness in his left leg and foot that had been progressively worsening since his first ER visit on June 9, 2014, and also since his ER visit on June 18, 2014.

21.

In fact, the numbness had worsened to the point that when examined and prodded by Dr. Prabhakar, Mr. Mills had virtually no sensation in his left foot. He demonstrated this lack of feeling to Dr. Prabhakar by jabbing a needle into his left foot. He also had developed two dark spots on his foot and an open pus producing lesion. Mr. Mills showed Dr. Prabhakar the lesion during the exam and wiped pus off of his foot.

22.

Despite his worsening symptoms and prior diagnosis of diabetic neuropathy, Dr. Prabhakar only noted neuropathy as a possibility. Furthermore, she reduced Mr. Mills' Gabapentin prescription from 300 mg daily to 200 mg daily. Dr. Prabhakar told Mr. Mills to follow up in 6 months.

23.

When Mr. Mills questioned Dr. Prabhakar about the decrease in the Gabapentin (even though his condition had worsened) and the lack of an antibiotic

for the lesion, Dr. Prabhakar responded that she was a "certified diabetic doctor" and dismissed his concern.

24.

However, after Mr. Mills' visit to the VA on July 10, 2014, his condition worsened under the measures prescribed by Dr. Prabhakar.

25.

On July 29, 2014, Mr. Mills again called the TAP line at the VA and spoke to Valencia Thomas, a program support assistant. Ms. Thomas recorded Mr. Mills' chief complaint as "62 y/o MALE c/o pain in legs. states medicine not working." and spoke with a phone nurse named Rita Osuji. Mr. Mills reported to Nurse Osuji that Dr. Prabhakar's treatment was not working. His pain was not being controlled to the extent that he was having a hard time ambulating. He also told the nurse about the sore on his left foot "near the nail bed with some discoloration and swelling of the entire toe." He also reported some discoloration of his heel that looked like a bruise. The nurse indicated that she thought he needed further evaluation and would forward her note to the primary care provider for disposition. Mr. Mills would be contacted with the VA primary care provider's disposition and by the "nurse care manager's surrogate to for [sic] the modalities for evaluation."

26.

Nurse Osuji forwarded her note to the VA PCP, Delvin Lane, and another nurse Carolyn Robinson. Both acknowledged receipt of the note on July 30, 2014. Dr. Lane noted that it was difficult to evaluate Mr. Mills' pain based on clinical history and suggested an office visit. On August 1, 2014, the doctor's disposition was sent to and acknowledged by Cynthia R. Lake, a program support assistant with the VA. The records do not indicate that Mr. Mills was ever informed of Dr. Lane's disposition nor was he instructed to see the doctor or go to his closest emergency department.

27.

Four days later, on August 5, 2014, Mr. Mills went to the Rockdale Medical Center Emergency Department and was admitted to the hospital due to ischemic gangrene and cellulitis in his left foot. He was also suffering from renal failure.

28.

On August 7, 2014, after a test for Staphylococcus aureus returned positive, Mr. Mills' first, second, and third toes on his left foot were amputated. Unfortunately, his sepsis continued to progress, and on August 15, 2014, Mr. Mills' left leg below his knee was amputated.

29.

Mr. Usher Mills has suffered substantial and significant damage as a result of the negligence of the healthcare providers at the VA. He experienced excruciating pain as his neuropathy worsened and his pus producing lesion resulted in sepsis. Mr. Mills had to undergo two significant and painful amputations and lost his left leg below his knee.

30.

From July 10, 2014, up to the point in time that Mr. Mills was admitted to the hospital on August, 5, 2014, Dr. Prabhakar and Mr. Mills' other VA healthcare providers (other agents and employees of the United States of America) failed to properly assess and manage what were treatable and well-known complications of Mr. Mills' diabetes.

31.

These breaches of the medical standard of care and ordinary care resulted in the amputation of Mr. Mills' leg on August 15, 2014.

**PROFESSIONAL AND ORDINARY NEGLIGENCE**

32.

Plaintiff adopts and re-alleges paragraphs 1 through 31 of this Complaint as if fully stated herein.

33.

Dr. Prabhakar and other agents or employees of Defendant United States of America (collectively "VA Providers") undertook to provide care and treatment to Mr. Mills in July and August of 2014.

34.

Mr. Mills' VA Providers violated acceptable medical practices by failing to properly assess and treat Mr. Mills' diabetic neuropathy, pain, and foot lesions on July 9, 2014. The VA providers, who became aware of Mr. Mills' deteriorating condition on July 29, 2014, further violated accepted medical practices by failing to instruct Mr. Mills to go to an ER (i.e., see a physician on an emergent basis) and/or even communicate to Mr. Mills that he needed to see his VA PCP after the PCP became aware of Mr. Mills' condition on July 30, 2014, and noted that he needed to evaluate Mr. Mills in the office.  The VA Providers also violated their duty of ordinary care when they failed to communicate and arrange an appointment for Mr. Mills with his PCP after being directed to do so.

35.

Mr. Mills' VA Providers owed a duty to Mr. Mills to exercise the degree of skill and care ordinarily employed by medical providers in the care and treatment of patients under similar conditions and like surrounding circumstances.

36.

The VA Providers' negligence was a proximate cause of the injuries suffered by Mr. Mills, including the eventual amputation of his left leg. Thus, Defendant is liable to Plaintiff for the damages that he has suffered as a result of the negligence of Defendant's agents.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays as follows:

(a) That Defendant be served with summons and process and be required to answer this lawsuit;

(b) That Plaintiff recover damages from Defendant for special damages, mental and physical pain and suffering, and all general damages in an amount to be proven at trial but in excess of $10,000; and

(c) For any such other and further relief as the Court may deem just and appropriate.

This 16th day of August, 2016.

                                              Respectfully Submitted,

|  |  |
|---|---|
| SHAMP SPEED JORDAN WOODWARD | /s/ JENNIFER AUER JORDAN |
| 1718 Peachtree Street, N.W. | Jennifer Auer Jordan |
| Suite 660 | Georgia Bar No. 027857 |
| Atlanta, Georgia 30309 | Joshua Silk |
| (404) 893-9400 (telephone) | Georgia Bar No. 903916 |
| (404) 260-4180 (facsimile) | *Attorneys for Plaintiff* |
| jordan@ssjwlaw.com |  |
| silk@ssjwlaw.com |  |

## **CERTIFICATE OF COMPLIANCE**

Pursuant to the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, this is to certify that the foregoing COMPLAINT complies with the font and point selections approved by the Court in Local Rule 5.1C.  The foregoing was prepared using Times New Roman font (14 point).

This 16th day of August, 2016.

                                            Respectfully Submitted,

                                            /s/ JENNIFER AUER JORDAN
                                            Jennifer Auer Jordan
1718 Peachtree Street, N.W.            Georgia Bar No. 027857
Suite 660                                        Joshua Silk
Atlanta, Georgia 30309                Georgia Bar No. 903916
(404) 893-9400 (telephone)          *Attorneys for Plaintiff*
(404) 260-4180 (facsimile)
jordan@ssjwlaw.com
silk@ssjwlaw.com